Cite as 2022 Ark. App. 487

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-22-53

| | |
|---|---|
| TRAVIS A. PILCHER<br><br>APPELLANT<br><br>V.<br><br>RASHADA T. MCWILLIAMS<br><br>APPELLEE | Opinion Delivered November 30, 2022<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION<br>[NO. 60DR-21-316]<br><br>HONORABLE W. MICHAEL REIF, JUDGE<br><br>REVERSED AND REMANDED |

**STEPHANIE POTTER BARRETT, Judge**

Appellant Travis Pilcher appeals the Pulaski County Circuit Court's order finding that appellee Rashada McWilliams was the proper person to have sole custody of the parties' child, Child 1, who was five months old at the time the parties divorced, subject to his increasing visitation as Child 1 grew older. Specifically, Travis argues that the circuit court committed reversible error (1) by considering proffered excluded evidence in making its custody determination; and (2) by awarding Rashada primary custody of Child 1. We find merit in Travis's arguments, and we reverse and remand this case to the circuit court for entry of an order consistent with this opinion.

The parties married on January 26, 2020, and separated on or about January 1, 2021. Rashada was pregnant with Child 1 at the time of separation. A temporary-custody hearing

was held on March 23, 2021, Child 1 was born on March 28, and an order giving Travis visitation on Tuesdays and Wednesdays from 5:00 to 7:00 p.m. and on Saturdays and Sundays from 3:00 to 5:00 p.m. was entered on April 2. After a final divorce and custody hearing on September 1, the circuit court awarded Rashada custody of Child 1 and gave Travis visitation that increased in duration as Child 1 grows older. Travis timely filed this appeal.

This court reviews matters of child custody de novo on appeal, but the circuit court's findings are not reversed unless they are clearly erroneous. *Janjam v. Rajeshwari*, 2020 Ark. App. 448, 611 S.W.3d 202. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Whether a circuit court's findings are clearly erroneous turns in large part on the credibility of the witnesses, and special deference is given to the circuit court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the circuit court's superior position, ability, and opportunity to observe the parties carry as great a weight as those involving minor children. *Id.*

The primary consideration in child-custody cases is the welfare and best interest of the child, with all other considerations being secondary. *Id.* Although joint custody is favored in Arkansas, *see* Ark. Code. Ann. § 9-13-101(a)(1)(A)(iii) (Supp. 2021), it is not mandatory. *Wilhelm v. Wilhelm*, 2018 Ark. App. 47, 539 S.W.3d 619. The statutory preference for joint custody does not override the ultimate guiding principle that the best

interest of the child is the polestar factor for custody determination. *Carrillo v. Morales Ibarra*, 2019 Ark. App. 189, 575 S.W.3d 151.

Rashada testified that when she was six months pregnant with Child 1, she and Travis were involved in a two-hour argument during which Travis told her that he was going to break her laptop and burn the house down. The argument ended with Travis punching a hole in the wall beside Rashada's head.

Rashada called as a witness, Veronica Lopez, the mother of Travis's older child, and began to question Veronica about an order of protection she filed against Travis in 2014; Travis's attorney objected to the testimony on the basis of relevance and remoteness. Rashada responded that it was relevant because it related to Travis's anger issues; the circuit court ruled that Rashada had to lay a foundation for the testimony, that the information had to be more recent than seven years ago, and it stated, "[A]t this juncture, I'm going to sustain the objection, but lay some foundation."

Veronica then testified that she believed Travis had anger issues. She recounted an incident in 2018 in which Travis got into a fight with his sister while his and Veronica's child was present, and Travis threw a lunchbox at his sister's head. Travis objected on the basis of relevance, but his objection was overruled. Veronica said that she had not personally witnessed any other violent outbursts from Travis from 2018 to 2021, although she had heard about some.

Rashada's counsel then asked the circuit court if he had laid a sufficient foundation to inquire about the 2014 incident. Travis's counsel objected, and Rashada's counsel asked

if he could proffer the testimony, noting that Travis's expert witness, Dr. Dawn Doray, needed to hear the testimony to consider if she believed the behavior was abusive. Travis's counsel countered that Dr. Doray had already reviewed Veronica's deposition in which she talked about the incidents, and she had also reviewed the ex parte order and petition for an order of protection in the 2014 incident. Nevertheless, the circuit court allowed Rashada to proffer Veronica's testimony, stating, "I'm not going to consider it in making a custody determination in this case at this time, but I'm going to let him make a proffer of the evidence."

Veronica testified about the 2014 incident. Travis had objected to the clothing their child was wearing for his visitation time; when Veronica took the child inside to change, Travis followed her inside uninvited. Travis yelled at Veronica and attempted to take the child with him while the child was undressed; when Veronica told him that he needed to wait outside and refused to let him inside the child's bedroom, Travis shoved Veronica to the other side of the room, and Veronica called 911. Veronica said there were many threats made that day, and that was not the first time he had threatened her life. Veronica wrote in her petition for an order of protection that she was afraid Travis would take their child and disappear; that they had separated a year earlier after he had tried to drag her out of their bedroom by her arm; that he had then grabbed her pony tail and threw her into the kitchen; when she picked up their child, he tried to take the child from Veronica by twisting her wrist to the point of almost breaking it; and he then threatened to kill her and get rid of her body. Veronica explained that she had not dropped the order of protection; rather, it had been

addressed in their agreed order of paternity. On cross-examination, Veronica admitted that she had not filed any additional petitions for orders of protection since 2014; she denied any knowledge that Travis had physically abused their child; she allowed Travis additional visitation with their child over and above the visitation he had been awarded; Travis had played an active part in raising their child; and other than some lapses in communication, she believed they coparented well.

Dr. Doray testified that both instances of altercations between Travis and Veronica and Travis and Rashada were situational couple violence that occurred during the distinct time of separation—it was not long standing, and it was not a frequent or severe pattern. She did not believe Child 1 had witnessed any violence. She believed that Child 1 should not be apart from either parent for more than two to three days so that the child could form secure attachments to both parents. She felt Rashada's proposed visitation schedule was too restrictive and controlling of Travis's visitation and that Travis should be able to exercise his visitation outside of Rashada's home, even to the point of overnight visitation in the near future. She also stated that Travis should be involved in academics when the time came for that as well as all of Child 1's normal daily routines.

On cross-examination, Dr. Doray admitted that threatening to burn the house down was not appropriate conduct, and if Travis had pulled Veronica across the room by her hair and twisted her wrist until she thought it might break, that could be considered abusive behavior. She testified that she had heard nothing during the hearing that made her believe Travis would be a danger to Child 1. Dr. Doray agreed that she had some concerns about

the couple violence in two different relationships and that Travis had some anger issues that could be addressed. She agreed that she was not making a custody evaluation; she further agreed that she was not suggesting that the parties begin having equal time with Child 1 immediately, and that there had to be a period of transition to increase Travis's time with Child 1.

Travis's first argument on appeal is that the circuit court committed reversible error by considering excluded evidence that was only proffered in making its custody decision. Specifically, Travis contends that the circuit court erroneously considered Veronica's proffered evidence in making its custody determination, despite its ruling that it would not do so, and such consideration prejudiced him. We agree.

"[A] nonjury case should not be reversed because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." *Zhan v. Sherman*, 323 Ark. 172, 176, 913 S.W.2d 776, 778 (1996). While noting that there is not an Arkansas case directly on point, Travis directs us to the North Dakota case of *Fuhrman v. Fuhrman*, 254 N.W.2d 97 (N.D. 1977), in which hearsay statements were admitted over objection as substantive evidence in a custody determination. While acknowledging that the introduction of allegedly inadmissible evidence in a nonjury case would rarely constitute reversible error, the North Dakota Supreme Court held in *Fuhrman* that the inadmissible evidence appeared to

6

have been used to induce the lower court to make an essential finding that would otherwise not have been made.

The reasoning of the *Fuhrman* court is persuasive in this situation. Here, the circuit court considered evidence it had ruled to be inadmissible to conclude that it was not in Child 1's best interest for Rashada and Travis to have joint custody. In the divorce decree, the circuit court made the following findings:

> 9. The Court finds based on the testimony presented that Ms. Pilcher had proven by clear and convincing evidence that joint custody is not in the best interest of the minor child.
>
> 10. Ms. Pilcher proved by a preponderance of the evidence that Mr. Pilcher committed violence against her when she was six months pregnant. An audio recording was introduced that took place on the day prior to the parties' separation.
>
> 11. Pictures were introduced showing the hole in the wall that Mr. Pilcher made above Ms. Pilcher's head during the argument.
>
> 14. [sic] Evidence was also introduced that Mr. Pilcher had similar domestic violence when he separated from the mother of his oldest child, Veronica Lopez.
>
> 15. Dr. Dawn Doray did testify about the different aspects of domestic violence. She characterized Mr. and Mrs. Pilcher's domestic violence as situational violence, which typically occurs when the parties end relationships. She also testified that the domestic violence that occurred between Mr. and Mrs. Pilcher was similar to what occurred between Mr. Pilcher and Veronica Lopez.
>
> 16 The Court finds that while Dr. Doray did testify that domestic violence is not likely to occur in the future, this Court cannot overlook that it occurred in two separate situations.

Although the circuit court refused to allow Lopez's testimony, it did allow Rashada to proffer it. Although the circuit court told the parties that it would not consider Veronica's testimony

7

in making a custody determination, it is evident from the findings in its order that it was indeed considered in the custody determination, which was clearly erroneous.

Travis's second point on appeal relates to his first point. He argues that the circuit court erred in awarding Rashada custody on the basis of Arkansas Code Annotated section 9-13-101(c) (Supp. 2021). We agree. In an original child-custody determination in a divorce, there is a rebuttable presumption that joint custody is in the child's best interest. Ark. Code Ann. § 9-13-101(a)(1)(A)(iv)*(a)* (Supp. 2021). One way to rebut an award of joint custody is if the circuit court finds by clear and convincing evidence that joint custody is not in the child's best interest. Ark. Code Ann. § 9-13-101(a)(1)(A)(iv)*(b)(1)*. Another is found in Ark. Code Ann. § 9-13-101(c)(1) and (2), which provides:

> (c)(1) If a party to an action concerning custody of or a right to visitation with a child has committed an act of domestic violence against the party making the allegation or a family or household member of either party and such allegations are proven by a preponderance of the evidence, the circuit court must consider the effect of such domestic violence upon the best interests of the child, whether or not the child was physically injured or personally witnessed the abuse, together with such facts and circumstances as the circuit court deems relevant in making a directive pursuant to this section.

> (2) There is a rebuttable presumption that it is not in the best interest of the child to be placed in the custody of an abusive parent in cases in which there is a finding by a preponderance of the evidence that the parent has engaged in a pattern of domestic abuse.

In the present case, the circuit court found and set forth in the divorce decree that, "pursuant to Arkansas Code Annotated section 9-13-101(c), if a party proves by a preponderance of the evidence that domestic violence has occurred, the Court must consider the effect of the domestic violence on the best interest of the minor child, and there is a

rebuttable presumption that custody should not be placed in the custody of the abusive parent." The circuit court then found that in light of the testimony presented, Rashada had proved by clear and convincing evidence that joint custody was not in the child's best interest, noting her testimony regarding the domestic violence that occurred while she was pregnant as well as the evidence of domestic violence with Veronica, and finding that it could not overlook the fact that domestic violence had occurred in two separate situations.

We hold that the circuit court stopped short in its analysis under this statutory subsection—there is a rebuttable presumption that it is not in the child's best interest to be placed in the custody of an abusive parent where "*there is a finding by a preponderance of the evidence that the parent had engaged in a pattern of domestic abuse.*" Ark. Code Ann. § 9-13-101(c)(2) (emphasis added). There was not a finding by the circuit court of a pattern of domestic abuse in this case, and the only evidence properly before it regarding domestic abuse was the one incident concerning Rashada while she was pregnant. Because there was not a pattern of domestic abuse shown by admissible evidence, there was no presumption to be rebutted, and it was clearly erroneous for the circuit court to make that finding.

Reversed and remanded.

VIRDEN and HIXSON, JJ., agree.

*The Law Offices of Katherine E. Blackmon*, by: *Jalen Toms* and *Katherine Blackmon Carroll*, for appellant.

*Bennie O'Neil*, for appellee.

9